## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PETER PALMISANO on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | **No.** |
| **-against-** | **CLASS ACTION COMPLAINT** |
| **BRIAD RESTAURANT GROUP, LLC, BRIAD RESTAURANT GROUP N.J., LLC, BRIAD RESTAURANT GROUP, INC.** | **Jury Trial Demanded** |
| **Defendants.** | |

Plaintiff Peter Palmisano, individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover minimum wages, overtime compensation, unlawful deductions, and other wages for Plaintiff Peter Palmisano ("Plaintiff" or "Palmisano") and his similarly situated co-workers – servers, bussers, runners, bartenders, barbacks, hosts, and other "tipped workers" – who work or have worked at T.G.I. Friday's restaurants owned and/or operated by Briad Restaurant Group, LLC, Briad Group N.J., LLC, and Briad Group, Inc. (collectively, "T.G.I. Friday's" or "Briad" or "Defendants").

2.      Plaintiff brings this action on behalf of himself and similarly situated current and former employees who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), specifically, the collective action provision of 29 U.S.C. §

216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated of their lawfully earned wages.

3.      Plaintiff also brings this action on behalf of himself and similarly situated current and former tipped workers in New Jersey pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New Jersey Wage and Hour Law ("NJWL"), N.J.S.A. § 34:11-56a, *et seq*. and the supporting New Jersey Department of Labor and Workforce Development regulations.

4.      Briad is a rapidly expanding hospitality company that operates and owns some of the country's most recognizable brands, including T.G.I. Friday's, Wendy's, Marriott, and Hilton.[1]

5.      Upon information and belief, throughout the relevant periods, Briad operated 121 franchises in New Jersey.

6.      Briad is the second largest T.G.I. Friday's franchise restaurant operator in the country.[2]

7.      Briad maintained control, oversight, and direction over Plaintiff and similarly situated employees, including the ability to hire, fire, and discipline them.

8.      Briad maintained a human resources website where tipped workers at any Briad T.G.I. Friday's restaurant could access information regarding enroll in benefits programs.[3]

9.      At all times relevant, Briad paid Plaintiff at a "tipped" minimum wage rate–less than the full minimum wage rate for non-tipped workers.

---

[1]      http://www.briad.com/company.html (last visited Feb. 27, 2016).
[2]      http://www.briad.com/ (last visited on Feb. 28, 2016).
[3]      ftp://forms.briad.net/ (last visited on Feb. 27, 2016).

10.     Briad did not satisfy the strict requirements under the FLSA and the NJWL that would allow them to pay this reduced minimum wage (take a "tip credit").

11.     Briad maintained a policy and practice whereby tipped workers were required to perform non-tip producing side work *unrelated* to the employees' tipped occupation.  As a result, tipped workers are engaged in a dual occupation while being compensated at the tip credit rate.

12.     Briad also maintained a policy and practice whereby tipped workers were required to spend a substantial amount of time, more than 20 percent, performing non-tip producing side work *related* to the employees' tipped occupation.

13.     Specifically, Defendants maintained a policy and practice whereby tipped workers were required to spend a substantial amount of time performing non-tip producing side work.

14.     Defendants required tipped workers to perform side work at the start and end of every shift.

15.     Defendants typically scheduled tipped workers to work lunch, dinner, or a "swing" shift.

16.     Regardless of the type of shift, Defendants required tipped workers to perform side work at the start and end of each shift.

17.     Defendants required tipped workers to perform most side work before the restaurant opened or after the restaurant closed and customers had left.

18.     For instance, Defendants typically required tipped workers to stay at work approximately two hours after the restaurant closed.

19.     During these periods, Defendants required tipped workers to perform side work.

20.     As a result, tipped workers spent in excess of two hours and more than twenty percent of their work time engaged in side work duties.

21.     Tipped workers also engaged in "dual job" tasks.

22.     Defendants paid tipped workers for this work at or below the reduced tip credit minimum wage rate.

23.     The duties that Defendants required tipped workers to perform are duties that are customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

24.      The side work and dual job tasks that Defendants required tipped workers to perform include, but was not limited to: (1) setting up the expeditor line in the back of the house (filling bins with ice, lettuce, tomatoes, condiments, and sauces); (2) cutting lemons and limes; (3) setting up and washing dishes and glassware at the bar; (4) slicing garnishes for the bar; (5) putting together desserts; (6) packing to go orders; (7) roll silverware; (8) sweeping and mopping floors; (9) cleaning down the expeditor's line; (10) scrubbing walls and power cleaning; (11) cleaning the inventory room; and (12) taking out garbage.

25.     The side work and dual job duties described above are not specific to particular customers, tables, or sections, but are performed in mass quantities for the entire shift or for future shifts.

26.     Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments.

27.     Defendants also maintained a policy and practice whereby tipped workers were encouraged and/or required to work off-the-clock.

28.     For example, Managers required Plaintiff to do test pours before every shift without compensation.

29.     Managers required bartenders to attend mandatory scheduled bar meetings once a

month. These mandatory meetings lasted approximately two hours each time.  Defendants did not compensate Plaintiff or any bartender for their work at these mandatory meetings.

30.     Managers also required bartenders to participate in bar clean ups off-the-clock and without compensation.  These bar clean ups lasted approximately two hours happened four to five times a year.  Defendants did not compensate Plaintiff or any bartender for their work during these mandatory cleanups.

31.     Some of the work that Plaintiff performed off-the-clock was in excess of 40 hours in a workweek.

32.     While working off-the-clock, Plaintiff was engaged in non-tip producing side work, as described above.

33.     Defendants also maintained a policy and practice whereby they take unlawful deductions from tipped workers' wages.

34.     Defendants required tipped workers to pay customers' bills when the customers walk out of the restaurant without paying for their meals, commonly referred to as a "customer walkout."

35.     Defendants did not typically schedule or grant rest or meal breaks to tipped workers.

36.     Plaintiff also brings this action seeking a declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 that the class and collective action waiver contained in Defendants' Arbitration Agreement is unlawful and unenforceable.

37.     The class and collective action waiver contained in Defendants' Arbitration Agreement is unlawful because the National Labor Relations Act and the Norris LaGuardia Act do not allow employers to subject its employees to an employment agreement prohibiting

concerted legal activity.  *See, e.g., UnitedHealth Group, Inc. v. NLRB*, 363 NLRB No. 134, 2016 WL 759193 (Feb. 25, 2016); *Totten v. Kellogg Brown & Root, LLC*, No. No. 14 Civ. 1766, 2016 WL 316019 (C.D. Cal. Jan. 22, 2016); *Murphy Oil USA, Inc. v. Hobson*, 361 NLRB No. 72 (Oct. 28, 2014).

## THE PARTIES

### Plaintiff

#### Peter Palmisano

38.     Palmisano is an adult individual who is a resident of Middletown, New Jersey.

39.     Palmisano was employed by Defendants as a bartender at the T.G.I. Friday's restaurant located at 3492 U.S. Route 9, Freehold, NJ 07728, from in or around March 2012 until December 2014.

40.     Briad owned and operated the T.G.I. Friday's restaurants at which Palmisano worked.

41.     Palmisano is a covered employee within the meaning of the FLSA and the NJWL.

42.     A written consent form for Palmisano is being filed with this Class Action Complaint.

### Defendants

#### Briad Group LLC

43.     Briad Restaurant Group, LLC employed Plaintiff and similarly situated employees at all relevant times.

44.     During all relevant times, Briad Restaurant Group, LLC has been Plaintiff's employer within the meaning of the FLSA and the relevant state wage laws.

45.     The Briad Restaurant Group, LLC owned and/or operated T.G.I. Friday's

restaurants during the relevant period.

46.     The Briad Restaurant Group, LLC is a domestic corporation organized and existing under the laws of New Jersey State.

47.     The Briad Restaurant Group, LLC's principal executive office is located at 78 Okner Parkway, Livingston, New Jersey 07039.

48.     At all relevant times, the Briad Restaurant Group, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

49.     The Briad Restaurant Group, LLC allowed employees to freely transfer between, or be shared by, the various T.G.I. Friday's restaurants it operated without retraining such employees.

50.     The Briad Restaurant Group, LLC applied the same employment policies, practices, and procedures to all tipped workers at its T.G.I. Friday's restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, tips, and the making of unlawful deductions.

51.     The Briad Restaurant Group, LLC was the name of an entity printed on Plaintiff's paychecks.

52.     Upon information and belief, at all relevant times, The Briad Restaurant Group, LLC has an annual gross volume of sales in excess of $500,000.

**Briad Restaurant Group N.J., LLC**

53.     Briad Restaurant Group N.J., LLC employed Plaintiff and similarly situated employees at all relevant times.

54.   During all relevant times, Briad Restaurant Group N.J., LLC has been Plaintiff's employer within the meaning of the FLSA and the relevant state wage laws.

55.   The Briad Restaurant Group N.J., LLC owned and/or operated T.G.I. Friday's restaurants during the relevant period.

56.   The Briad Restaurant Group N.J., LLC is a domestic corporation organized and existing under the laws of New Jersey State.

57.   The Briad Restaurant Group N.J., LLC's principal executive office is located at 25 Hanover Road, Florham Park, NJ 07932.

58.   At all relevant times, the Briad Restaurant Group N.J., LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

59.   The Briad Restaurant Group N.J., LLC allowed employees to freely transfer between, or be shared by, the various T.G.I. Friday's restaurants it operated without retraining such employees.

60.   The Briad Restaurant Group N.J., LLC applied the same employment policies, practices, and procedures to all tipped workers at its T.G.I. Friday's restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, tips, and the making of unlawful deductions.

61.   Upon information and belief, at all relevant times, Briad Restaurant Group N.J., LLC has an annual gross volume of sales in excess of $500,000.

**Briad Group Inc.**

1.   Briad Restaurant Group Inc. employed Plaintiff and similarly situated employees at all relevant times.

2.      During all relevant times, Briad Restaurant Group Inc. has been Plaintiff's employer within the meaning of the FLSA and the relevant state wage laws.

3.      The Briad Restaurant Group Inc. owned and/or operated T.G.I. Friday's restaurants during the relevant period.

4.      The Briad Restaurant Group Inc. is a domestic corporation organized and existing under the laws of New Jersey State.

5.      The Briad Restaurant Group Inc.'s principal executive office is located at 25 B. Hanover Road, Florham Park, NJ 07932.

6.      At all relevant times, the Briad Restaurant Group Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

7.      The Briad Restaurant Group Inc. allowed employees to freely transfer between, or be shared by, the various T.G.I. Friday's restaurants it operated without retraining such employees.

8.      The Briad Restaurant Group Inc. applied the same employment policies, practices, and procedures to all tipped workers at its T.G.I. Friday's restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, tips, and the making of unlawful deductions.

9.      Upon information and belief, at all relevant times, The Briad Restaurant Group Inc. has an annual gross volume of sales in excess of $500,000.

## JURISDICTION AND VENUE

62.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

63.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

64.     Defendants are subject to personal jurisdiction in New Jersey.

65.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

66.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## DECLARATORY JUDGMENT FACTUAL ALLEGATIONS

67.     When Plaintiff began his employment with Defendants, Defendants required him to sign its Arbitration Agreement, which contained a clause that purported to waive "any and all rights to the application of class or collective action procedures or remedies" (hereinafter, the "Class and Collective Action Waiver").

## COLLECTIVE ACTION ALLEGATIONS

68.     Plaintiff brings the First and Second Causes of Action, the FLSA claims, on behalf of himself and all similarly situated current and former tipped workers employed at T.G.I. Friday's restaurants owned, operated, and/or controlled by Defendants, for a period of three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, and who elect to opt-in to this action (the "FLSA Collective Members").

69.     At all relevant times, Plaintiff and the FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay

Plaintiff at the legally required minimum wage for all hours worked and one-and-one-half times this rate for work in excess of 40 hours per workweek, and requiring tipped workers to engage in dual job duties and side work for more than twenty percent of their time at work.  Defendants also required Plaintiff to work off-the-clock and without compensation in violation of the FLSA and took deductions from Plaintiff's wages that caused him to earn below the minimum wage. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

70.     Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by failing to record the hours that employees work.

71.     Defendants are aware or should have been aware that federal law requires them to pay employees minimum wage for all of the hours they work.

72.     Defendants are aware or should have been aware that federal law requires them to pay employees performing non-exempt duties an overtime premium for hours worked in excess of 40 per workweek.

73.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

74.     The First and Second Causes of Action are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

75.     The FLSA Collective Members are readily ascertainable.

76.     For the purpose of notice and other purposes related to this action, the FLSA Collective Members' names and addresses are readily available from Defendants' records.

77.     Notice can be provided to the FLSA Collective Members via First Class Mail to the last address known to Defendants.

## NEW JERSEY CLASS ACTION ALLEGATIONS

78.     Plaintiff brings the Third and Fourth Causes of Action, New Jersey Wage and Hour Law claims under Rule 23, on behalf of all persons who work or have worked as tipped workers and/or wait staff at T.G.I. Friday's in New Jersey owned and/or operated by Defendants for a period of two years prior to the filing of the Class Action Complaint in this action, and the date of final judgment in this matter ("NJ Rule 23 Class").

79.     Excluded from the NJ Rule 23 Class Members are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the NJ Rule 23 Class.

80.     The members of the NJ Rule 23 Class ("NJ Rule 23 Class Members") are readily ascertainable.  The number and identity of the NJ Rule 23 Class Members are determinable from the Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay for each NJ Rule 23 Class Member are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Rule 23.

81.     The NJ Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

82.     There are more than 100 NJ Rule 23 Class Members.

83.     Plaintiff's claims are typical of those claims which could be alleged by any NJ Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each NJ Rule 23 Class Member in separate actions.

84.     All the NJ Rule 23 Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wages, failing to pay overtime, and failing to pay for off-the-clock work.

85.     Plaintiff and the NJ Rule 23 Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the New Jersey Wage Laws.

86.     Plaintiff and the NJ Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all NJ Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the NJ Rule 23 Class Members.

87.     Plaintiff and other NJ Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

88.     Plaintiff is able to fairly and adequately protect the interests of the NJ Rule 23 Class Members and has no interests antagonistic to the NJ Rule 23 Class Members.

89.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

90.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions

engender.  Because the losses, injuries, and damages suffered by each of the individual NJ Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual NJ Rule 23 Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual NJ Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual NJ Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the NJ Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

91.     Upon information and belief, Defendants and other employers throughout the state violate the NJWL.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

92.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

93.     Common questions of law and fact exist as to the NJ Rule 23 Class that

predominate over any questions only affecting them individually and include, but are not limited

to, the following:

    (a)     whether Defendants violated the NJWL;

    (b)     whether Defendants paid Plaintiff and the NJ Rule 23 Class at the proper minimum wage rate for all hours worked;

    (c)     whether Defendants employed Plaintiff and the NJ Rule 23 Class Members;

    (d)     whether Defendants maintained a policy or practice of requiring, suffering, or permitting Plaintiff and the NJ Rule 23 Class Members to work off-the-clock without proper compensation;

    (e)     whether Defendants made unlawful deductions from wages paid to Plaintiff and the NJ Rule 23 Class Members;

    (f)     whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the NJ Rule 23 Class Members, and other records; and

    (g)     the nature and extent of class-wide injury and the measure of damages for those injuries.

## **FACTUAL ALLEGATIONS**

94.    Consistent with their policies and patterns or practices as described herein,

Defendants harmed Plaintiff, individually, as follows:

**Peter Palmisano**

95.    Defendants did not pay Plaintiff proper wages for all of the time that he was

suffered or permitted to work each workweek.

96.    Throughout the duration of his employment at T.G.I. Friday's, Plaintiff received

paychecks from Defendants that did not properly record or compensate him for all the hours that

he worked.

97.    Defendants paid Plaintiff at the New Jersey tipped minimum wage rate when he

should have been paid at the full minimum wage rate.

98.     Defendants required Palmisano to engage in dual job duties and for at least 20 percent of his shift they required him to perform non-tipped work.  These duties included, but are not limited to, setting up the expeditor line in the back of the house (filling bins with ice, lettuce, tomatoes, condiments, and sauces), cutting lemons and limes, setting up dishes and glassware at the bar, slicing garnishes for the bar, putting together desserts, packing to go orders, roll silverware, sweeping and mopping floors, cleaning down the expeditor's line, scrubbing walls and power cleaning, cleaning the inventory room, and taking out garbage.

99.     Although Plaintiff should have been paid the full minimum wage, Defendants paid him an hourly rate that fell below the minimum wage.

100.    Defendants frequently required Plaintiff to perform work off-the-clock without compensation.

101.    For instance, Defendants instructed Plaintiff not to punch in every day until after he had completed his test pours. Defendants compensated Palmisano for only the time that he was punched in.

102.    Defendants required Plaintiff to attend mandatory scheduled bar meetings once a month. These mandatory meetings lasted approximately two hours each.  Defendants instructed Plaintiff not to punch in for the meetings and did not compensate Plaintiff for the attending the meetings.

103.    Managers also required Plaintiff to participate in bar clean ups off-the-clock and without compensation.  These bar clean ups lasted approximately two hours happened four to five times a year.  Defendants instructed Plaintiff not to punch in for the bar clean ups and did not compensate Plaintiff for the bar clean ups.

104.    As Palmisano typically worked four to five shifts per week, some of the above-mentioned off-the-clock work was in excess of 40 hours per week.

105.    Some weeks, Palmisano worked approximately 40 hours per week without being paid proper overtime compensation.

106.    During his employment, Palmisano generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- Four to five shifts per week.  Morning shifts typically started at approximately 10:00 a.m. and ended at approximately 5:00 p.m.  Dinner shifts typically started at approximately 5:00 p.m. and ended at approximately between 2:30 a.m. and 3:00 a.m.

107.    Even when Defendants paid Plaintiff overtime premiums for some hours he worked in excess of 40 per workweek, these premiums were not calculated at one and one-half times the full minimum wage rate.

108.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Plaintiff.

109.    Defendants failed to furnish Plaintiff with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

## FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiff Palmisano and the FLSA Collective)**

110.    Plaintiff, on behalf of himself and the FLSA Collective Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

111.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

112.    At all relevant times, each of the Defendants have been, and continues to be, an employer engaged in interstate commerce and/or in the production of goods for commerce,

within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, each Defendants have employed "employee[s]," including Palmisano and the FLSA Collective Members.

113.    Defendants were required to pay directly to Plaintiff and the FLSA Collective Members the applicable state minimum wage rates for all hours worked.

114.    Defendants failed to pay Plaintiff and the FLSA Collective Members the minimum wages to which they are entitled under the FLSA.

115.    Defendants were not eligible to avail itself of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201, *et seq.*, because Defendants required Palmisano and the FLSA Collective Members to perform a substantial amount of dual job duties and side work in excess of twenty percent of their work time.  During these periods, Defendants compensated Palmisano and the FLSA Collective Members at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29 U.S.C. §§ 201*, et seq.*

116.    Defendants also regularly required Plaintiff and the FLSA Collective Members to perform non-tipped side work ***unrelated*** to their tipped occupation such as sweeping floors, mopping floors, and sorting and rolling silverware.  During these periods, Defendants compensated Plaintiff and the FLSA Collective Members at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29 U.S.C. §§ 201*, et seq.*

117.    Defendants also required Palmisano and the FLSA Collective Members to to pay for customer walkouts.

118.    The deductions customer walkouts resulted in Plaintiff and the FLSA Collective Members being paid less than the full minimum wage and overtime pay rate, in violation of 29 U.S.C. §§ 201 *et. seq.* and 29 C.F.R. § 531.35.

119.    Further, Defendants required Plaintiff and the FLSA Collective Members to perform work off-the-clock and without compensation, depriving them of the minimum wage.

120.    Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective Members.

121.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201, *et seq.*

122.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201, *et seq.*

<u>**SECOND CAUSE OF ACTION**</u>
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff Palmisano and the FLSA Collective)**

123.    Plaintiff, on behalf of himself and the FLSA Collective Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

124.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective Members.

125.    Plaintiff and the FLSA Collective Members worked in excess of 40 hours during some workweeks in the relevant period.

126.    Defendants willfully failed to pay Plaintiff and the FLSA Collective Members one-and-one-half times the full minimum wage for all work in excess of 40 hours per workweek.

127.    Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective Members.

128.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201, *et seq.*

129.    As a result of Defendants' violations of the FLSA, Palmisano and the FLSA Collective Members have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201, *et seq.*

### THIRD CAUSE OF ACTION
### New Jersey Wage Law – Minimum Wage
### (Brought on behalf of Plaintiff Palmisano and the NJ Rule 23 Class)

130.    Plaintiff, on behalf of himself and the NJ Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

131.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NJWL, as detailed in this Class Action Complaint.

132.    At all times relevant, Plaintiff and the NJ Rule 23 Class Members have been employees of Defendants, and Defendants have been the employer of Plaintiff and the NJ Rule 23 Class Members within the meaning of the N.J.S.A § 34:11-56a, *et seq.*, and the supporting New Jersey State Department of Labor Regulations.

133.    At all times relevant, Plaintiff and the NJ Rule 23 Class Members have been covered by the NJWL.

134.    The wage provisions of N.J.S.A § 34:11-56a, *et seq.*, and the supporting New Jersey State Department of Labor Regulations apply to Defendants, and protect Plaintiff and the NJ Rule 23 Class Members.

135.    Defendants failed to pay Plaintiff and the NJ Rule 23 Class Members the minimum hourly wages to which they are entitled under the NJWL and the supporting New Jersey State Department of Labor Regulations.

136.    Defendants were not eligible to avail themselves of the tipped minimum wage rate because of Defendants' deductions for the customer walkouts resulted in Plaintiff and the NJ Rule 23 Class Members being paid less than the full minimum wage and overtime pay rate, in violation N.J.S.A § 12:56-17.1.

137.    Further, Defendants required Plaintiff and the NJ Rule 23 Class Members to perform work off-the-clock and without compensation, depriving them of the minimum wage.

138.    Defendants were required to pay Plaintiff and the NJ Rule 23 Class Members the full minimum wage at a rate of: (b) $8.25 per hour for all hours worked from January 1, 2014 through December 31, 2014; (c) $8.38 per hour for all hours worked from January 1, 2015 to the present, under the N.J.S.A § 34:11-56a, *et seq.* and the supporting New Jersey State Department of Labor Regulations.

139.    Through its knowing or intentional failure to pay minimum hourly wages to Plaintiff and the NJ Rule 23 Class Members, Defendants have willfully violated the N.J.S.A § 34:11-56a, *et seq.*, and the supporting New Jersey State Department of Labor Regulations.

140.    Defendants failed to furnish Plaintiff and the NJ Rule 23 Class Members with a

statement with every payment of wages listing hours worked, rates paid, gross wages, and the tip allowance claimed as part of their minimum hourly wage rate, in violation of the N.J.S.A. § 34:11-56a*, et seq.*, and the supporting New Jersey Department of Labor and Workforce Development Regulations, including but not limited to the regulations in N.J.A.C. 12:56*, et seq.*

141.    Due to Defendants' willful violations of the NJWL, Plaintiff and NJ Rule 23 Class Members are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NJWL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### New Jersey Wage Law – Unpaid Overtime
### (Brought on behalf of Plaintiff Palmisano and the NJ Rule 23 Class)

142.    Plaintiff, on behalf of himself and the NJ Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

143.    Defendants failed to pay Plaintiff and the NJ Rule 23 Class Members the proper overtime wages to which they are entitled under the NJWL and the supporting New Jersey State Department of Labor Regulations.

144.    Defendants failed to pay Plaintiff and the NJ Rule 23 Class Members one-and-one-half times the full minimum wage for all work in excess of 40 hours per workweek.

145.    Through their knowing or intentional failure to pay Plaintiff and the NJ Rule 23 Class Members overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the N.J.S.A § 34:11-56a*, et seq.*, and the supporting New Jersey State Department of Labor Regulations.

146.    Due to Defendants' willful violations of the NJWL, Plaintiff and the NJ Rule 23 Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated

damages as provided for by the NJWL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**Declaratory Judgment Pursuant to Fed. R. Civ. P. 57; 28 U.S.C. §§ 2201, 2201**
**(Brought on behalf of Plaintiff Palmisano)**

147.    Plaintiff realleges and incorporates by reference herein all allegations in all preceding paragraphs.

148.    An actual and justiciable controversy exists between Plaintiff and Defendants concerning the enforceability of Defendants' class action waiver to bar the class and collective claims that Plaintiff has asserted in this Class Action Complaint.

149.    Defendants' requirement that its employees, including Plaintiff, waive their rights to collectively pursue employment-related claims in all forums, arbitral and judicial, is unenforceable.

150.    Defendants' class and collective action waiver, which purports to preclude an employee from joining with any other employee in making a common claim in either a judicial or arbitral forum, is an illegal "yellow dog contract" that is unenforceable under the NLGA, 29 U.S.C. § 101 *et seq.*

151.    Specifically, Section 3 of the NLGA, 29 U.S.C. § 103, denies federal courts the power to enforce "any promise or undertaking," such as Defendants' Class and Collective Action Waiver, which conflicts with employees' rights to engage in concerted activity for mutual aid or protection protected by Section 2 of the NLGA, 29 U.S.C. § 102.

152.    There is no clearly expressed intent by Congress for the FAA to restrict the scope of the NLGA, thus this Court may not determine that the FAA was intended to limit the scope of the NLGA, because "under established canons of statutory construction, it will not be inferred

- 23 -

that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed." *Murphy Oil USA, Inc.*, 361 NLRB No. 72, at *14 (internal quotations omitted).

153.   Plaintiff is entitled to a declaration that Defendants' Class and Collective Action Waiver is unlawful and cannot be enforced against them as a matter of law.

154.   Plaintiff is further entitled to any additional necessary or proper relief pursuant to 29 U.S.C. § 2202.

<u>**PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**</u>

**WHEREFORE**, Plaintiff Palmisano, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A.   Designation of this action as a collective action on behalf of the FLSA Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.   Designation of Plaintiff Palmisano as Representatives of the FLSA Collective Action;

C.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. § 201, *et seq.*;

D.   An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

E.   Certification of this case as a class action pursuant to Rule 23;

F.      Designation of Plaintiff Palmisano as representative of the NJ Rule 23 Class and counsel of record as Class Counsel;

G.      Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the N.J.S.A § 34:11-56a, *et seq.* and the supporting New Jersey Department of Labor Regulations and Workforce Development Regulations;

H.      Unpaid minimum wages, overtime pay, and liquidated damages pursuant to the NJWL and the supporting New Jersey Department of Labor and Workforce Development Regulations;

I.      Appropriate equitable and injunctive relief to remedy Defendants' violation of New Jersey law, including but not limited to an order enjoining Defendants from continuing its unlawful practices;

J.      Penalties, as provided by law;

K.      Attorneys' fees and costs of action incurred herein, including expert fees;

L.      Pre-judgment and post-judgment interest, as provided by law;

M.      Issuance of a declaratory judgment that Defendants' purported Class and Collective Action Waiver is unlawful and unenforceable as a matter of law; and

N.      Such other legal and equitable relief as this Court deems necessary, just, and proper.

Finally, Plaintiff Palmisano requests a reasonable service award to compensate him for his time spent attempting to recover wages for Class and Collective Members and for the risks he took in doing so.

Dated: Newark, New Jersey
      April 19, 2016

Respectfully submitted,

/s/ Stephen H. Kahn
 Stephen H. Kahn

**Kahn Opton, LLP**
Stephen H. Kahn
One Parker Plaza
Fort Lee, New Jersey 07024
Telephone: (201) 947-9200
Fax: (201) 402-6878


**OUTTEN & GOLDEN LLP**
Justin M. Swartz (*pro hac vice* motion forthcoming)
Sally J. Abrahamson (*pro hac vice* motion forthcoming)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

*Attorneys for Plaintiff and*
*the Putative Collective and Rule 23 Classes*